UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

CLIFTON TERRON LEE,

        Plaintiff,                        Case No. 2:25-cv-228

v.                                        Honorable Ray Kent

SARAH SCHROEDER et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 3.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g., Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendants Schroeder and Havenor for failure to state a claim. The Court will also dismiss, for failure to state a claim, Plaintiff's official capacity claims against Defendants Giotto, Lawry, Gregurash, Nachtman, and Unknown Parties. The following personal capacity claims against Defendants Giotto, Lawry, Gregurash, Nachtman, and Unknown Parties remain in the case: (1) Plaintiff's First Amendment retaliation claims; (2) Plaintiff's Eighth Amendment excessive force claims against Defendants Giotto, Lawry, and Gregurash; and (3) Plaintiff's Eighth Amendment conditions of confinement claims against Defendants Nachtman and Unknown Parties.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

**Discussion**

I.    **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred there. Plaintiff sues the following MBP personnel in their official and personal capacities: Warden Sarah Schroeder, Lieutenant Unknown Havenor, Sergeant Unknown Nachtman, and Correctional Officers Unknown Giotto, Unknown Lawry, Unknown Gregurash, and Unknown Parties, referred to as correctional officers who serve on the Emergency Response Team. (Compl., ECF No. 1, PageID.2–3.)

Plaintiff states that on December 9, 2024, he was housed in Q-Block at MBP. (*Id.*, PageID.4.) On that date, Defendants Lawry, Gregurash, and Giotto came to Plaintiff's cell and imposed a "false [mattress] restriction due to [their] claim that [Plaintiff] took string out of [of] his bed earlier in that day." (*Id.*) Defendant Giotto said, "This is because of the grievances you filed." (*Id.*)

Defendants Lawry, Gregurash, and Giotto then assaulted Plaintiff by "elbowing, kneeing, and punching him as they sat on top of Plaintiff making it unable for him to breathe." (*Id.*, PageID.5.) Plaintiff claims this occurred while he was handcuffed and posed no threat to staff. (*Id.*) During the assault, these Defendants "made threatening comments and remarks that this was done due to previous grievances . . . Plaintiff had filed." (*Id.*) When Plaintiff tried to resolve the issue, non-party Lieutenant Schroderus said, "[You are] guilty of what [Defendant] Giotto [says you] did to the mattress because [you are] a n***** and a prisoner [and you all] are always guilty, no matter what." (*Id.* (asterisks added).) When Plaintiff tried to talk to non-party Prison Counselor Leboeuf, he said that he did not "give a f***." (*Id.* (asterisks added).) Plaintiff contends that he suffered many injuries from the assault. (*Id.*)

4

On January 10, 2025, Defendant Nachtman told Plaintiff, "File a grievance again and this same stuff will happen to you each time." (*Id.*) That same day, Defendants Nachtman and Unknown Parties came to Plaintiff's cell to conduct a strip search. (*Id.*, PageID.6.) After Plaintiff had removed his clothes, Defendants Nachtman and the Unknown Parties made Plaintiff sit in a restraint chair. (*Id.*) They then "wheeled Plaintiff out in the freezing cold butt naked, while it was below zero outside with snow on the ground." (*Id.*) Plaintiff claims that he was given "one gown" that was placed on top of him, but he was not given any clothes or coat "to go outside in." (*Id.*) Defendants Nachtman and Unknown Parties then placed Plaintiff in a cell covered with feces and urine. (*Id.*) When Plaintiff asked why he had been put in the cell without it being cleaned, Defendant Nachtman said, "It's for the grievances you filed on my co-workers." (*Id.*)

Plaintiff was seen by healthcare staff for the injuries he sustained to his arm and finger as a result of the assault by Defendants Lawry, Gregurash, and Giotto. (*Id.*) Plaintiff was prescribed a five-day course of medication. (*Id.*) Plaintiff was also seen by healthcare staff after walking around for a rash on his feet that he obtained after walking barefoot for several days in the cell covered with urine and feces. (*Id.*, PageID.6–7.) Plaintiff was "prescribed medication for several weeks." (*Id.*, PageID.7.)

On February 4, 2025, Defendant Havenor came to Plaintiff's cell to interview him regarding several grievances Plaintiff had filed. (*Id.*) Defendant Havenor refused to allow Plaintiff "to talk at all." (*Id.*) Instead, she stated, "I read all these grievances and I know [you are] lying, because all you n****** do around here is lie and assault my comrades, so you might as well sign off because [you are not going to] win!" (*Id.* (asterisks added).) Plaintiff requested the body camera footage, but he did not receive it. (*Id.*) Plaintiff appeals his grievances to Step II, asking Defendant Schroeder to investigate his claims. (*Id.*, PageID.8.)

5

Based upon the foregoing, Plaintiff indicates that he is asserting First Amendment retaliation claims and Eighth Amendment excessive force, conditions of confinement, and verbal harassment claims. (*Id.*, PageID.8–9.) The Court also construes Plaintiff's complaint to assert constitutional claims against Defendants Havenor and Schroeder premised upon their handling of Plaintiff's grievances. Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (*Id.*, PageID.10–11.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

    **A.**    **First Amendment Retaliation Claims**

Plaintiff contends that all Defendants retaliated against him in violation of his First Amendment rights. (Compl., ECF No. 1, PageID.9.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

    **1.**    **Defendants Giotto, Lawry, and Gregurash**

Plaintiff alleges that on December 9, 2024, Defendants Lawry, Gregurash, and Giotto came to Plaintiff's cell to place him on a false mattress restriction, and that Defendant Giotto said, "This is because of the grievances you filed." (Compl., ECF No. 1, PageID.4.) Plaintiff claims that Defendants Lawry, Gregurash, and Giotto then assaulted Plaintiff, and during the assault, they

7

"made threatening comments and remarks that this was done due to previous grievances . . . Plaintiff had filed." (*Id.*, PageID.5.)

Although Plaintiff has by no means proven his claims, at this point in the litigation, the Court will not dismiss Plaintiff's First Amendment retaliation claims against Defendants Giotto, Lawry, and Gregurash.

### 2.    Defendants Nachtman and Unknown Parties

Plaintiff alleges that on January 10, 2025, Defendant Nachtman told Plaintiff, "File a grievance again and this same stuff will happen to you each time." (*Id.*) That same day, Defendants Nachtman and Unknown Parties came to Plaintiff's cell to conduct a strip search. (*Id.*, PageID.6.) After Plaintiff had removed his clothes, Defendants Nachtman and the Unknown Parties made Plaintiff sit in a restraint chair. (*Id.*) They then "wheeled Plaintiff out in the freezing cold butt naked, while it was below zero outside with snow on the ground." (*Id.*) Plaintiff claims that he was given "one gown" that was placed on top of him, but he was not given any clothes or coat "to go outside in." (*Id.*) Defendants Nachtman and Unknown Parties then placed Plaintiff in a cell covered with feces and urine. (*Id.*) When Plaintiff asked why he had been put in the cell without it being cleaned, Defendant Nachtman said, "It's for the grievances you filed on my co-workers." (*Id.*)

Again, while Plaintiff has by no means proven his claims, at this point in the litigation, the Court will not dismiss Plaintiff's First Amendment retaliation claims against Defendants Nachtman and Unknown Parties.

### 3.    Defendants Havenor and Schroeder

Plaintiff suggests that Defendant Havenor retaliated against him by verbally harassing him, and that Defendant Schroeder retaliated against him by "failing to remedy a wrong after being informed, and fail[ing] to act on information indicating that unconstitutional acts were occurring." (*Id.*, PageID.9.)

8

While Plaintiff suggests that Defendant Havenor verbally harassed him because of his grievances, the Sixth Circuit has concluded that such harassment does not constitute adverse action. *See Smith v. Craven*, 61 F. App'x 159, 162 (6th Cir. 2003); *see also Spearman v. Williams*, No. 22-1309, 2023 WL 7000971, at *4 (6th Cir. Jul. 17, 2023) (stating "that verbal abuse, idle threats, and nonphysical harassment of prisoners, standing alone, . . . [does not] constitute an adverse action of constitutional significance"). Indeed, the Sixth Circuit has reasoned that minor harassment is insufficient to constitute adverse action because recognition of such a standard would "trivialize the First Amendment." *Thaddeus* 175 F.3d at 398–99 (citing *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)).

Moreover, with respect to Plaintiff's assertion that Defendant Schroeder refused to uphold his grievances at Step II, many courts, including this one, have held that the refusal to process or uphold a grievance is not an adverse action. *See, e.g.*, *Cameron v. Gurnoe*, No. 2:19-cv-71, 2019 WL 2281333, at *4–5 (W.D. Mich. May 29, 2019) (citing cases); *Branch v. Houtz*, No. 1:16-cv-77, 2016 WL 737779, at *6 (W.D. Mich. Feb. 25, 2016); *Ross v. Westchester Cnty. Jail*, No. 10 Civ. 3937 (DLC), 2012 WL 86467, at *8 (S.D.N.Y. Jan. 11, 2012) (discussing that the refusal to file a grievance is, without more, insufficient to constitute an adverse action); *Stone v. Curtin*, No. 1:11-cv-820, 2011 WL 3879505, at *4 (W.D. Mich. Aug. 31, 2011) (holding that the failure to process a prison grievance would not deter a prisoner of ordinary firmness from exercising his right to file a grievance); *Burgos v. Canino*, 641 F. Supp. 2d 443, 454 (E.D. Pa. 2009), *aff'd*, 358 F. App'x 302 (3d Cir. 2009) (finding that the rejection or denial of prison grievances does constitute an adverse action for purposes of a retaliation claim). Refusing to uphold a grievance could not deter a person of ordinary firmness from engaging in protected conduct because it does not have any adverse consequences.

9

Furthermore, to the extent Plaintiff seeks to hold Defendants Schroeder and Havenor liable for the other named Defendants' alleged retaliation based upon their supervisory rules, he may not do so. Government officials, such as Defendants Schroeder and Havenor, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976),

10

and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff has not alleged facts that would demonstrate that Defendants Havenor and Schroeder knowingly authorized or acquiesced in the mattress restriction, assault upon Plaintiff, and Plaintiff's placement in the restraint chair and the cell covered in bodily excrement. Therefore, their alleged failure to act, without more, does not give rise to liability under § 1983. *See Grinter*, 532 F.3d at 576; *Shehee*, 199 F.3d at 300.

For the foregoing reasons, Plaintiff's First Amendment retaliation claims against Defendants Havenor and Schroeder will be dismissed.

### B.    Claims Regarding Handling of Grievances

The Court has also construed Plaintiff's complaint to assert constitutional claims against Defendants Havenor and Schroeder premised upon their handling of Plaintiff's grievances.

Plaintiff has no due process right to file a prison grievance. The courts have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, the alleged conduct by these Defendants could not have deprived Plaintiff of due process.

11

Additionally, Plaintiff's right to petition government is not violated by any failure to process or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Moreover, any actions by these Defendants related to Plaintiff's grievances have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977), *overruled in other part by Lewis v. Casey*, 518 U.S. 343 (1996). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44

(2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

Accordingly, for each of the foregoing reasons, the Court will dismiss Plaintiff's claims regarding his use of the grievance process.

  **C.**  **Eighth Amendment Claims**

Plaintiff indicates that he is asserting Eighth Amendment excessive force, conditions of confinement, and harassment claims against Defendants.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

1. **Excessive Force**

Plaintiff states that on December 9, 2024, he was housed in Q-Block at MBP. (*Id.*, PageID.4.) On that date, Defendants Lawry, Gregurash, and Giotto came to Plaintiff's cell and imposed a "false [mattress] restriction due to [their] claim that [Plaintiff] took string out of [of] his bed earlier in that day," and Defendant Giotto said, "This is because of the grievances you filed." (*Id.*) Defendants Lawry, Gregurash, and Giotto then assaulted Plaintiff by "elbowing, kneeing, and punching him as they sat on top of Plaintiff making it unable for him to breathe." (*Id.*, PageID.5.) Plaintiff claims this occurred while he was handcuffed and posed no threat to staff. (*Id.*)

14

The Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson*, 503 U.S. at 9. "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to this type of Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). The objective component requires

15

a "contextual" investigation that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Although the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

At this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him. Given Plaintiff's allegations against Defendants Lawry, Gregurash, and Giotto, the Court will not dismiss Plaintiff's Eighth Amendment excessive force claims on initial review.

### 2. Conditions of Confinement

Next, Plaintiff contends that Defendants Nachtman and Unknown Parties violated his Eighth Amendment rights by "taking Plaintiff out in the freezing cold without any cloth[e]s on and into a cell with urine and feces inside the cell." (Compl,. ECF No. 1, PageID.8–9.) As set forth above, Plaintiff alleges that on January 10, 2025, Defendants Nachtman Unknown Parties forced Plaintiff to strip, placed Plaintiff in a restraint chair, and then "wheeled Plaintiff out in the freezing cold butt naked, while it was below zero outside with snow on the ground." (*Id.*, PageID.5–6.) Plaintiff claims that he was given "one gown" that was placed on top of him, but he was not given any clothes or coat "to go outside in." (*Id.*) Defendants Nachtman and Unknown Parties then placed Plaintiff in a cell covered with feces and urine. (*Id.*) Plaintiff contends that he was forced to walk around barefoot in that cell for several days and contracted a rash on his feet, which required him to be prescribed medication for several weeks. (*Id.*, PageID.7.)

16

At this stage of the proceedings, while Plaintiff has not proven his deliberate indifference claims, the Court will not dismiss Plaintiff's Eighth Amendment claims concerning his conditions of confinement against Defendants Nachtman and Unknown Parties on initial review.

### 3.  Verbal Harassment

Plaintiff's complaint can be construed to assert an Eighth Amendment claim against Defendant Havenor premised upon verbal harassment. (Compl., ECF No. 1, PageID.9.) As set forth *supra*, on February 4, 2025, Defendant Havenor came to Plaintiff's cell to interview him regarding several grievances Plaintiff had filed. (*Id.*, PageID.7.) Defendant Havenor refused to allow Plaintiff "to talk at all." (*Id.*) Instead, she stated, "I read all these grievances and I know [you are] lying, because all you n****** do around here is lie and assault my comrades, so you might as well sign off because [you are not going to] win!" (*Id.* (asterisks added).)

While the Court does not condone Defendant Havenor's comments, allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey*, 832 F.2d at 955. Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* Even the occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude. *See Torres v. Oakland Cnty.*, 758 F.2d 147, 152 (6th Cir. 1985). Accordingly, the Court will dismiss Plaintiff's Eighth Amendment claim against Defendant Havenor.

### 4.  Defendant Schroeder

Plaintiff suggests that Defendant Schroeder violated his Eighth Amendment rights by failing "to protect the Plaintiff's safety, remedy a wrong after being informed, and fail[ing] to act on information indicating that unconstitutional acts were occurring." (Compl., ECF No. 1, PageID.9.) Plaintiff's Eighth Amendment claim against Defendant Schroeder is essentially

premised upon supervisory liability. The Court has already concluded that Plaintiff cannot maintain a claim against Defendant Schroeder premised upon her supervisory position as Warden of MBP. For the same reasons discussed above in Part II.A.3, Plaintiff's Eighth Amendment claim against Defendant Schroeder will be dismissed.

### D. Official Capacity Claims

As set forth above, the Court has concluded that Plaintiff's claims against Defendants Schroeder and Havenor are subject to dismissal, and that Plaintiff may proceed on the following claims: (1) his First Amendment retaliation claims against Defendants Giotto, Lawry, Gregurash, Nachtman, and Unknown Parties; (2) his Eighth Amendment excessive force claims against Defendants Giotto, Lawry, and Gregurash; and (3) his Eighth Amendment conditions of confinement claims against Defendants Nachtman and Unknown Parties. Plaintiff, however, has named these Defendants in both their official and personal capacities. Accordingly, the Court must now consider whether Plaitniff can proceed on his official capacity claims against Defendants Giotto, Lawry, Gregurash, Nachtman, and Unknown Parties as well.

A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments, such as the MDOC, are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). And,

regardless, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013).

Here, Plaintiff seeks compensatory and punitive damages. (Compl., ECF No. 1, PageID.10–11.) However, as noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. *See, e.g.*, *Lapides*, 535 U.S. at 617. Similarly, Plaintiff may not seek monetary damages against Defendants Giotto, Lawry, Gregurash, Nachtman, and Unknown Parties in their official capacities. *Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.").

Plaintiff also seeks declaratory and injunctive relief. (Compl., ECF No. 1, PageID.9–10.) Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking prospective injunctive or declaratory relief is not treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). The *Ex parte Young* doctrine "rests on the premise—less delicately called a 'fiction'— that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign immunity purposes." *Virginia Ofc. for Prot. and Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (internal citation omitted.") The Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Here, Plaintiff's allegations against Defendants Giotto, Lawry, Gregurash, Nachtman, and Unknown Parties do not suggest that these individuals are engaged in ongoing violations of federal

19

law. Instead, Plaintiff's allegations concern discrete events that occurred on December 9, 2024, and January 10, 2025. Plaintiff, therefore, does not seek relief that is properly characterized as prospective. Accordingly, the Court will dismiss Plaintiff's official capacity claims against Defendants Giotto, Lawry, Gregurash, Nachtman, and Unknown Parties in their entirety.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Defendants Schroeder and Havenor will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's official capacity claims against Defendants Giotto, Lawry, Gregurash, Nachtman, and Unknown Parties. The following personal capacity claims against Defendants Giotto, Lawry, Gregurash, Nachtman, and Unknown Parties remain in the case: (1) Plaintiff's First Amendment retaliation claims; (2) Plaintiff's Eighth Amendment excessive force claims against Defendants Giotto, Lawry, and Gregurash; and (3) Plaintiff's Eighth Amendment conditions of confinement claims against Defendants Nachtman and Unknown Parties.

An order consistent with this opinion will be entered.

Dated:   October 20, 2025              /s/ Ray Kent
                                       Ray Kent
                                       United States Magistrate Judge